Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Friday, August 13, 2010 1:37:53 PM

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JAMIE ALAN BAILEY | ) | Case No. 09-2564 |
| | ) | |
| Debtor. | ) | Chapter 13 |
| _____ | ) | |
| | ) | |
| SHANNAN DAVANT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 10-15 |
| | ) | |
| JAMIE ALAN BAILEY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |

## MEMORANDUM OPINION

Shannan Davant filed this adversary proceeding against Jamie Alan Bailey (the "Debtor") to determine whether certain debts owed to her, arising out of the parties divorce, are excepted from the Debtor's anticipated Chapter 13 discharge. After the filing of the adversary complaint, Ms. Davant, *pro se*, filed a Motion for Sanctions against the Debtor and his counsel under Fed. R. Bankr. P. 9011 and 28 U.S.C. § 1927. Ms. Davant also filed a Motion to Dismiss the Debtor's bankruptcy filing.

For the reasons stated herein, the court will deny the Motion for Sanctions and will set a status conference on the Motion to Dismiss the Debtor's bankruptcy filing.

## I. BACKGROUND

1

Ms. Davant and the Debtor obtained a divorce from the Family Court of Taylor County on April 10, 2009. As part of the divorce decree, Ms. Davant was awarded one-half of the equity in the parties' formal marital home, and the Debtor was ordered to buy-out Ms. Davant's one-half interest for $27,000. In addition, the Debtor was ordered to pay Ms. Davant $500 monthly until she remarried, pay Ms. Davant's attorney $15,525 in fees, and provide medical and dental care for their two children.

The Debtor appealed the Family Court decree to the Circuit Court of Taylor County, but that appeal was denied on June 15, 2009. Following a August 5, 2009 hearing on a contempt motion filed by Ms. Davant, she was specifically awarded authority to place a lien on the formal marital home. The judgment was for $42,525, plus $2,000 in additional attorney's fees.

Having received no payment from the Debtor, Ms. Davant filed a second petition for contempt on October 22, 2009. The hearing on the contempt motion was set for November 19, 2009; however, on November 10, 2009, the Debtor filed a Chapter 13 bankruptcy petition, which stayed the contempt hearing. On December 15, 2009, Ms. Davant and her attorney filed a proof of claim in the Debtor's bankruptcy case for $48,818.50.

## II. DISCUSSION

In her motion for sanctions for alleged violations of Fed. R. Bankr. P. 9011 and 28 U.S.C. § 1927, Ms. Davant contends that the Debtor filed bankruptcy in bad faith and for an improper purpose; namely, to hinder, delay, harass, and to maliciously cause her to incur additional attorney's fees in an attempt to circumvent rulings from the Family Court of Taylor County. In addition, Ms. Davant claims that the Debtor made misrepresentations in providing information on his bankruptcy petition and schedules. These same allegations serve as the basis for Ms. Davant's Motion to Dismiss the Debtor's bankruptcy petition.

**A.    Sanctions Under Fed. R. Bankr. P. 9011 and 28 U.S.C. § 1927**

Ms. Davant asserts that the Debtor filed bankruptcy on November 10, 2009 – just eight days before a second contempt hearing before the Family Court of Taylor County. In her view, the Debtor's bankruptcy filing was solely to avoid the contempt proceeding. Moreover, Ms. Davant alleges that the Debtor, through bankruptcy, is improperly attempting to discharge certain child support obligations, failing to fully pay certain obligations, and making misrepresentations to the court regarding the status of those payments. Ms. Davant further contends that the Debtor's

2

bankruptcy filing is just another legal tactic in a long line of frivolous litigious filings that are intended to harass her, delay proceedings, and drive up her litigation costs.

Under Fed. R. Bankr. P. 9011, when an attorney submits a document to the court, the attorney is certifying that to the best of the attorney's "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the document "(1) is not being presented for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation . . . .[and] (3) the allegations and other factual contentions have evidentiary support . . . ." Rule 9011, which conforms to Fed. R. Civ. P. 11,[1] only applies to acts undertaken in a case before the court; it does not apply to pre-litigation conduct by a party. *E.g.*, *Nationwide Mut. Ins. Co. v. Burke*, 897 F.2d 734, 739 (4th Cir. 1990) (stating that to be sanctionable under Rule 11, a misrepresentation must be submitted in a pleading before the district court); *Adduono v. World Hockey Asso.*, 824 F.2d 617, 621 (8th Cir. 1987) (stating that Rule 11 only applies when the attorney has signed a pleading, motion, or other paper before the court). The overriding "purpose of Rule 11 is to deter baseless filings" and streamline the administration of cases in federal courts. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

Under 28 U.S.C. § 1927, "[a]ny attorney . . . admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." Whereas Rule 11 sanctions are based on the filing of a particular paper, § 1927 applies whenever an attorney "multiplies the proceedings." Section 1927 is "concerned only with limiting the abuse of court processes." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 762 (1980). For this reason, a court considering the propriety of a § 1927 award must focus "on the conduct of the litigation and not on its merits." *DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999). Thus, § 1927 does not apply to initial filings inasmuch as the initial filings do not "multiply the proceedings." *E.g.*, *DeBauche*, 191 F.3d at 511-12 (filing of single frivolous complaint, as matter of law, could not be held to have "multiplied the proceedings").

---

[1] 10 *Collier on Bankruptcy* ¶ 9011.02 (Alan N. Resnick & Henry J. Sommer, eds. 15th ed. rev. 2010) ("Because Rule 9011 conforms to Civil Rule 11, precedents that have been and will be developed under the latter will be of significant assistance in interpreting the former.").

Here, in support of her contentions that the Debtor and/or his attorney have violated either Rule 9011 or § 1927, Ms. Davant alleges that: (1) the Debtor is currently in contempt of the Taylor County Family Court and filed bankruptcy to avoid the enforcement of the contempt order – filing 8 days before a scheduled contempt hearing; (2) the Debtor misrepresented that he made efforts to purge himself of contempt at his bankruptcy meeting of creditors; (3) the Debtor told her that she "would never see a dime" in connection to what was owed her in her divorce proceeding; (4) the Debtor filed a September 29, 2009 Petition for Modification in the Taylor County Family Court, which Ms. Davant claims is improper and frivolous, and later withdrew it on the phantom assertion that he had discovered a remedy for his financial situation; (5) the Debtor filed a Motion for Modification of Parenting Plan and Motion for Contempt, the hearing on which occurred in Taylor County on March 31, 2010, which Ms. Davant claims is frivolous and contains numerous misrepresentations; (6) the Debtor is attempting to discharge a medical bill that is part of his child support obligations and has failed to make his children's insurance co-payments; (7) the Debtor misrepresented at his meeting of creditors that he has complied with all his child support obligations; (8) the Debtor misrepresented facts in his bankruptcy petition and schedules, such as claiming his children as dependents, inflating expenses related to his children, improperly valuing the marital home, falsifying the amount of liens on the marital home, including Tom Dyer, an attorney, as an unsecured creditor, that was paid by Ms. Davant in regards to a criminal proceeding initiated by the Debtor against her;[2] (9) the Debtor has failed to pay the mortgage at 4 Greenmeadow Lane, and his other debts, despite having the means to pay them; (10) the Debtor moved out of the former marital home and is attempting to discharge that mortgage obligation; (11) in April 2009, the Debtor stated that his credit card debt was about $5,800, but in his November 2009 bankruptcy, he lists credit card debt of about $47,500.

In addition to the above alleged acts, Ms. Davant claims that the Debtor and his attorney have engaged in a pattern of filing frivolous claims for the purpose of harassment, delay, and to cause Ms. Davant to incur attorney's fees. This alleged pattern includes: (a) filing a false police report against Ms. Davant; (b) making a police report that Ms. Davant's fiancé had abused the

---

[2] The debt owed to Tom Dyer was subsequently removed by the Debtor in an amended Schedule F.

4

Debtor's autistic, minor child; (c) filing a January 16, 2009 Emergency Petition for Modification of Parenting Plan, which was denied, (d) entering into a February 2009 Mediation Agreement regarding child custody, and then breaching that agreement; (e) appealing the Family Court's findings on April 5, 2009, regarding custody and apportioning expenses, which decision was affirmed by the Circuit Court; (f) filing a Motion to Stay the April 5, 2009 order, which was denied; (g) filing a false, June 7, 2009 police report against her with the West Virginia State Police; (h) filing a false June 10, 2009 police report against her with the Magistrate Court of Taylor County, including a domestic violence charge against Ms. Davant's new husband; and (i) making a November 2009 accusation against Ms. Davant and her new husband of child abuse as part of a psychiatric evaluation report needed to get medical services for the parties' autistic son.

Even taking the above allegations made by Ms. Davant as true, she has failed to demonstrate that she is entitled to relief in this court for either a violation of Rule 9011 or § 1927. Regarding Rule 9011, this court is only concerned with documents filed by the Debtor in this court. What the Debtor may have filed in the Family Court of Taylor County, and the penalty, if any, for those filings is a matter reserved to the Family Court of Taylor County. Thus, allegations (1), (4), (5), and (c),(e), (f), listed above, cannot form a basis for imposing Rule 9011 sanctions in this court. Likewise, Rule 9011 requires that documents be filed with this court. Consequently, allegations (2), (3), (7), (9), 10), (11), and (a), (b), (d), (g), (h), and (i) provide no grounds to impose sanctions under Rule 9011. That leaves only allegation (6) and (8) as a possible grounds for Rule 9011 sanctions.

Concerning allegation (6), the court is not aware of any specific document filed in this court whereby the Debtor is attempting to avoid making his children's medical insurance co-pays. The Debtor did list as an unsecured debt an amount owed to the Center for Autism Related Disorders on Schedule F, his schedule unsecured debts, but the Debtor is required to list all unsecured debts on Schedule F, and listing that entity as unsecured (whether or not the debt is subject to being discharged) is nothing more than what is required by the Bankruptcy Code. Thus, allegation (6) cannot form a basis for Rule 9011 sanctions.

Concerning allegation (8) – his alleged misrepresentation of facts on his bankruptcy schedules, the court finds no sanctionable conduct. More specifically, listing his son and daughter as dependents does not necessarily mean that they qualify as dependents under the Internal Revenue

5

Code. Likewise, the court finds no impropriety in listing Tom Dyer, Ms. Davant's criminal attorney, as a possible creditor on his original Schedule F. Finally with regard to allegedly inflating the expenses related to the care of his children, improperly valuing the marital home, and falsifying the amount of liens against the marital home, Ms. Davant has failed to state how the Debtor's statements are baseless, intended to harass her, cause her unnecessary delay, or increase the costs of this litigation. The Debtor did acknowledge an error in his schedules regarding the amount of debt secured by the former marital residence, but that mistake was apparently addressed at his meeting of creditors, and the Debtor filed an amended Schedule D to correct the misstatement. In sum, the amount and nature of the Debtor's alleged misrepresentations on his schedules do not, in this court's view, warrant the imposition of Rule 9011 sanctions.

Regarding the alleged violation(s) of 28 U.S.C. § 1927, the only documents filed in this court that are of relevance are the Debtor's bankruptcy petition and his responses to pleadings and motions filed in this adversary proceeding, which was initiated by Ms. Davant. The Debtor has not "multiplied proceedings" before this court sufficient to be held liable under § 1927.

**B.     Motion to Dismiss Bankruptcy Petition**[3]

In support of her motion to dismiss the Debtor's bankruptcy filing, Ms. Davant incorporates all the allegations underlying her motion for Rule 9011 and § 1927 sanctions, and, in addition, argues that the totality of the circumstances of this case demonstrates that the bankruptcy petition was filed in bad faith.

As stated by the United States Supreme Court, "[t]he principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" *Marrama v. Citizens Bank*, 549 U.S. 365, 367 (2009) (citation omitted). Under 11 U.S.C. § 1307(c), a court may convert or dismiss a Chapter 13 bankruptcy case for "cause." In determining whether "cause" is present to dismiss or convert, the court may consider whether a debtor filed the Chapter 13 bankruptcy petition

---

[3] As the legal basis for seeking dismissal of the Debtor's bankruptcy case, Ms. Davant cites to Fed. R. Bankr. P. 1017 and 9013, and 11 U.S.C. §§ 1112(b) and 1307(c). The Federal Rules of Bankruptcy Procedure cited by Ms. Davant provide her with no right of relief. Likewise, this is a Chapter 13 case – not a Chapter 11 case – and § 1112(b) is not applicable. Section 1307(c) provides a list of "cause" to either dismiss or convert a Chapter 13 case and the court will adjudicate her motion pursuant to § 1307(c).

in bad faith. *E.g.*, *Marrama*, 549 U.S. at 379 (2009) ("Under § 1307(c), a Chapter 13 proceeding may be dismissed or converted to Chapter 7 'for cause.' One such 'cause' recognized by bankruptcy courts is 'bad faith.'"); *In re Kestell*, 99 F.3d 146, 149 (4th Cir. 1999) ("[T]he Bankruptcy Code, both in general structure and in specific provisions, authorizes bankruptcy courts to prevent the use of the bankruptcy process to achieve illicit objectives."); *Carolin Corp. v. Miller*, 886 F.2d 693, 698 (4th Cir. 1989) (finding that a good faith requirement to filing a bankruptcy petition is implicit in the Bankruptcy Code)

In determining if bad faith is present, the court is to consider the totality of the circumstances, focusing on "the fairness involved in the initiation of Chapter 13 bankruptcy proceedings . . . ." *In re Love*, 957 F.2d 1350, 1355, 1360 (7th Cir. 1992). In viewing the totality of the circumstances, the court should consider "objective evidence of a fundamentally unfair result and subjective evidence that a debtor filed a petition for an fundamentally unfair purpose that was not in line with the spirit of the Bankruptcy Code . . . ." *Love*, 957 F.2d at 1357. The moving party under 11 U.S.C. § 1307(c) bears the burden of proof, and a court should be "reluctant to dismiss a petition under Section 1307(c) for lack of good faith." *Love*, at 1355-56. Factors that a court should consider in determining the existence of a good faith filing include: (1) the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; (2) the timing of the petition; (3) how the debt arose; (4) the debtor's motive in filing the petition; (5) how the debtor's actions affected creditors; (6) the debtor's treatment of creditors both before and after the petition was filed; and (7) whether the debtor has been forthcoming with the bankruptcy court and the creditors. *Id.* at 1357; *see also Marrama*, 549 U.S. at 375 n.11 (stating that conduct sufficient to constitute bad faith under § 1307(c) "must, in fact, be atypical" and is limited to extraordinary cases).

Here, Ms. Davant accuses the Debtor of filing bankruptcy for an improper purpose, namely to avoid the enforcement of the orders of the Taylor County Family Court, to harass her, to delay proceedings, and to cause her additional expenses. Ms. Davant further infers that the Debtor has incurred numerous debts in contemplation of bankruptcy, and is using his bankruptcy filing as a sword, not a shield, against her. In her view, this bankruptcy filing is part of the Debtor's non-economic goal that she "not see a dime." If true, such allegations may support a finding that the Debtor's case was filed in bad faith. *See, e.g.*, *Huckfeldt v. Huckfeldt (In re Huckfeldt)*, 39 F.3d 829,

7

832-33 (8th Cir. 1994) ("C. Huckfeldt filed a Chapter 7 petition to frustrate the divorce court decree and to push his ex-wife into bankruptcy. He then manipulated his immediate earnings to ensure that the Chapter 7 proceeding would achieve these non-economic motives. . . . . [S]uch conduct has long been considered unworthy of bankruptcy protection.").

The Debtor denies Ms. Davant's allegations of nefarious motives in his bankruptcy filing. Instead, he asserts that he has been unable to make the lump sum equitable distribution payment ordered by the Family Court to Ms. Davant. He claims that he did not file bankruptcy until Ms. Davant garnished his wages, and, moreover, he asserts that through his Chapter 13 plan, he will pay his domestic support obligations to Ms. Davant. The Debtor states that he seeks to employ one of the legitimate aims of Chapter 13, which is to obtain a discharge of his debts (at least those not excepted from discharge).

In short, the court cannot rule on Ms. Davant's motion to dismiss the Debtor's bankruptcy case in the absence of an evidentiary hearing, where the court can weigh the evidence and credibility of the witnesses.

### III. CONCLUSION

The court will deny Ms. Davant's motion to sanctions under Fed. R. Bankr. P. 9011 and 28 U.S.C. § 1927, and will set a scheduling conference on Ms. Davant's motion to dismiss the Debtor's bankruptcy petition as a bad faith filing under 11 U.S.C. § 1307(c).[4]

---

[4] Ms. Davant, proceeding *pro se*, is held to a lesser standard in her pleadings than ones drafted by an attorney. *White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989). Ms. Davant filed her motion to dismiss the Debtor's bankruptcy case in the context of her adversary proceeding against the Debtor to declare her marital debts excepted from his anticipated Chapter 13 discharge. A motion to dismiss a bankruptcy case under § 1307(c) should be filed in the Debtor's main bankruptcy case – not this adversary proceeding. Consequently, the court will direct the Clerk to docket the relevant documents in the Debtor's main bankruptcy case, No. 1:09-bk-02564, and all further proceedings and filings related to the motion to dismiss shall take place under that case number.

8