# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| JAMIE ALAN BAILEY, ) | Case No. 09-2564 |
| ) | |
| Debtor. ) | Chapter 13 |
| _____ ) | |
| ) | |
| SHANNAN DAVANT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. Proc. No. 10-15 |
| ) | |
| JAMIE ALAN BAILEY, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## **MEMORANDUM OPINION**

Shannan Davant, *pro se*, filed this adversary proceeding to except certain obligations owed to her by her former spouse, Jamie Alan Bailey (the "Debtor"), from his anticipated Chapter 13 discharge pursuant to 11 U.S.C. §§ 523(a)(5) and (15). At trial, the court explained to Ms. Davant that debts of the type described in § 523(a)(15) are subject to being discharged on completion of all plan payments in a Chapter 13 case;[1] thus, the only issue before the court was what portion, if any, of the Debtor's obligations to her is of the type excepted from discharge under § 523(a)(5).

For the reasons stated herein, the court will grant in part and deny in part the relief requested

---

[1] 11 U.S.C. § 1328(a)(2); *In re DeBerry*, 429 B.R. 532, 537 (Bankr. M.D.N.C. 2010) (explaining that debts of the type described in 11 U.S.C. § 523(a)(15) are dischargeable in a Chapter 13 case).

1

in Ms. Davant's adversary complaint.

## I. BACKGROUND

Ms. Davant and the Debtor obtained a divorce from the Family Court of Taylor County on April 10, 2009. As part of the divorce decree, Ms. Davant was awarded one-half of the equity in the parties' former marital home, and the Debtor was ordered to buy out Ms. Davant's one-half interest for $27,000. In addition, the Debtor was ordered to pay Ms. Davant's attorney's fees of $15,525. More specifically, the divorce decree stated:

> 12.     The marital home was appraised in 2007 at a value of $239,000, and pursuant to the parties' agreement, it is to be promptly reappraised, with the cost of the appraisal to be paid by [the Debtor]. By agreement [the Debtor] shall buy out [Ms. Davant's] one-half interest in the equity therein, said equity being the reappraised fair market value, but not less than $239,000, after deducting $185,000 from said value, which amount was the balance of the mortgage loan as of the date of separation.
> . . . .
> 14.     Due to the disparity in incomes and the complexity of this case, mostly caused by [the Debtor], he shall be required to pay [Ms. Davant's] attorney fees and expenses as documented herein . . . .
> . . . .
> 21.     [The Debtor] shall pay a total sum of $15,525 to [Ms. Davant] representing attorney fees and expenses incurred by her in this divorce action and in a criminal action initiated by [the Debtor], being $18,525 for the divorce action, plus $2,000 for the criminal action, less $5,000 already being paid by [the Debtor] on a Bank of America credit card account. . . .

(Pl. Ex. 13).

In addition to the award of equity and attorney's fees, the decree of divorce obligated the Debtor to pay $500 in monthly alimony, $1,431 in monthly child support, and to provide medical and dental insurance coverage for his children. At the time of the trial in this case, the Debtor's alimony obligation had terminated on the remarriage of Ms. Davant. The Debtor testified that he was current on child support payments, and all outstanding medical debts and co-pays were paid.

At trial, Ms. Davant testified that the monetary awards in the divorce decree were based primarily on the disparity of income between the Debtor, who earns in excess of $100,000 per year, and herself, who did not generally work outside the home. As a "stay-at-home mom," Ms. Davant stated that the Family Court judge knew she did not have the means to pay her attorney's fees, which

2

had been inflated by the actions of the Debtor. In Ms. Davant's view, the award of attorney's fees was to help Ms. Davant out financially, and to help her raise the parties' two children, one of whom is autistic and has special needs. Also, because she was essentially homeless after moving out of the former marital home, Ms. Davant testified that the award of equity in the marital home was for the purpose of allowing her to maintain a household for herself and her children while she completed an academic degree.

The Debtor appealed the Family Court decree to the Circuit Court of Taylor County, but that appeal was denied on June 15, 2009. Following an August 5, 2009 hearing on a contempt motion filed by Ms. Davant, she was specifically awarded authority to place a lien on the former marital home. The judgment was for $42,525, plus $2,000 in additional attorney's fees:

> 3. Ms. Davant has incurred additional attorney fees and expenses in the amount of $2,000 due to [the Debtor's] contemptuous actions, and she is entitled to a judgment for that amount, plus statutory interest therefrom from August 5, 2009, until said amount is fully paid.

(Def. Ex. 3).

## II. DISCUSSION

Ms. Davant seeks to except from the Debtor's anticipated Chapter 13 discharge the following obligations: (1) $27,000 representing her portion of the equity in the parties' former marital home; (2) $15,525 representing the award of attorney's fees in the parties' decree of divorce; and (3) $2,000 representing attorney's fees awarded to Ms. Davant in August 2009, pursuant to her motion for contempt.

Under 11 U.S.C. § 523(a)(5), "[a] discharge under section . . . 1328(b) of this title does not discharge an individual debtor from any debt . . . (5) for a domestic support obligation." The term "domestic support obligation" is specifically defined in the Bankruptcy Code:

> The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is--
>     (A) owed to or recoverable by--
>         (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>         (ii) a governmental unit;
>     (B) in the nature of alimony, maintenance, or support (including assistance

3

>provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of--
>>(i) a separation agreement, divorce decree, or property settlement agreement;
>>(ii) an order of a court of record; or
>>(iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>
>(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

§ 101(14A).

Here, elements (A), (C), and (D) are plainly met by Ms. Davant. The award of Ms. Davant's portion of the equity in the former marital home, and both awards of attorney's fees accrued before the Debtor filed his bankruptcy petition and are sums recoverable by Ms. Davant, the Debtor's former spouse. Her entitlement to the unpaid sums are established either in the parties' divorce decree, or in a subsequent order of the Family Court. Ms. Davant's right to collect the amounts owed to her has not been assigned to a governmental entity. Accordingly, the only issue with regard to whether the obligations owed to Ms. Davant may be excepted from the Debtor's discharge is subsection (B) – whether the amounts owed to her are in the nature of alimony, maintenance, or support.

In determining whether an obligation is in the nature of alimony, maintenance, or support, "the true intent of the parties rather than the labels attached to an agreement or the application of state law control[, but ] an examination of a written agreement [is] persuasive evidence of intent." *Tilley v. Jessee*, 789 F.2d 1074, 1077 (4th Cir. 1986). Thus, if the language of an agreement designates the type of payment, that designation erects a "substantial obstacle" to the party opposing it. *Id.* at 1078. Because the Code favors dischargeability, the spouse advocating an exception from discharge has the burden of establishing the requisite intent. *Id.*

In *Kettner v. Kettner*, No. 91-587, 1991 U.S. Dist LEXIS 21130 at *2-6 (E.D. Va. Nov. 19, 1991), the district court distilled four non-exclusive factors to assist in determining whether an obligation is in the nature of alimony, maintenance, or support in light of all the circumstance of a

4

case: (1) the actual language and substance of the agreement; (2) the financial situation of the parties at the time of the agreement, including their prospects for future income; (3) the function served by the obligation at the time of the agreement; and (4) whether there is any evidence of overbearing at the time of the agreement that would cause the court to question the intent of a spouse.  In *Catron v. Catron,* No. 94-1279, 1994 U.S. App. LEXIS 36061 at *14 (4th Cir. Dec. 21, 1994), the Fourth Circuit opined that these factors were "not inconsistent with [its] cases and [it saw] no error of law in the bankruptcy court's use of them." *See also Robinson v. Robinson (In re Robinson)*, No. 05-2338, 2007 Bankr. LEXIS 473 at *8-11 (Bankr. N.D.W. Va. Feb. 5, 2007) (applying the four factors).  The Fourth Circuit's approval of the four factors set forth in *Kittner*, however, "is not an enactment of them and should not be construed as disapproval of other formula."[2]  *Catron*, 1994 U.S. App. LEXIS 36061 at *15.

In this case, the parties' divorce decree – the product of a contentious divorce proceeding where both sides were represented by counsel – provides persuasive evidence of the Family Court's intent in awarding Ms. Davant her one-half interest in the equity of the former marital home and her attorney's fees.

In Paragraph 12 of the divorce decree, the Debtor was ordered to buy out Ms. Davant's one-half interest in the former marital home.  The Family Court's order did not state that the award of one-half the equity was related to, or in any way contingent on, death, remarriage, economic disparity, the length of the marriage, the existence of minor children, the employability or

---

[2] Other courts have stated factors such as: "'the label given to the obligation in the underlying instrument; the express terms of the obligation; the form and placement of the debt in the original agreement or decree; whether the debt terminates on the occurrence of death, remarriage, etc.; the economic disparity between the parties; the length of the marriage; whether there are minor children in the care of the creditor spouse; whether the support award would have been adequate absent the liability in question; the intention of the court to provide support to the creditor spouse or children; the age, employability and educational levels of the parties; the language of the decree and the inferences which can be drawn therefrom; whether the creditor spouse suffered an economic disadvantage as a result of the marriage; whether the debts are payable directly to the former spouse; the circumstances leading to the dissolution of the marriage; and the financial resources, actual or potential, of each spouse.'" *In re Gianakas*, 917 F.2d 759, 762 n.1 (3rd Cir. 1990) (citation omitted).

educational levels of the parties. In fact, the decree of divorce separately awarded Ms. Davant child support and alimony. No evidence suggests that Paragraph 12 was the result of overbearing conduct; rather, Paragraph 12 is a recognition of the value of the marital residence, the existence of secured obligations against the residence, and an equal division of the home's equity. Even though Ms. Davnat testified that the intent of the Family Court in awarding her one-half of the equity in the former marital home was to maintain her in a new home with minor children, and to allow her time to complete an academic degree while she cared for the children, no language in the divorce decree reflects that intent. Under *Tilley*, 789 F.2d at 1077, there must be a mutual intent of the parties to treat an obligation as being in the nature of alimony, maintenance, or support. The Debtor did not agree that this was the intent of the parties. Furthermore, the fact that the Debtor was also entitled to half the equity and not some lesser portion indicates that Ms. Davant's award of equity is more in the nature of a division of marital property than one for alimony, maintenance, or support. Consequently, the court finds that Ms. Davant's entitlement to $27,000, representing her one-half interest in the equity of the former marital residence, is not in the nature of alimony, maintenance, or support and is a dischargeable obligation in a Chapter 13 case to the extent that it represents a personal obligation of the Debtor.

Regarding Ms. Davant's entitlement to $15,525 in attorney's fees, the Family Court specifically stated in Paragraph 14 that the award was based on the "disparity in incomes and the complexities of this case, mostly caused by [the Debtor]." Accordingly, the award of attorney's fees was directly related to the financial situation of the parties at the time of the agreement. Also, as Ms. Davant credibly testified, she had no real income and the Debtor earned in excess of $100,000 per year. As a "stay-at-home mom" Ms. Davant stated that the Family Court judge knew she did not have the means to pay her attorney's fees and the award of attorney's fees was to help Ms. Davant out financially – to help her raise the parties' two children. Consequently, the court finds that the $15,525 award of attorney's fees is in the nature of alimony, maintenance, or support and is therefore not a dischargable obligation in the Debtor's Chapter 13 case.

Finally, regarding Ms. Davant's award of an additional $2,000 in attorney's fees in the August 13, 2009 Order Reflecting Events of Contempt Hearing, the Order specifically states: "Ms. Davant has incurred additional attorney's fees and expenses in the amount of $2,000 due to [the Debtor's] contemptuous actions . . . ." Accordingly, the $2,000 in attorney's fees was awarded

based on the Debtor's bad conduct.  It was not related to, or in anyway contingent on, death, remarriage, economic disparity, the length of the marriage, the existence of minor children, the employability or educational levels of the parties. Consequently, the court concludes that the $2,000 award of attorney's fees is not in the nature of alimony, maintenance, or support and is a dicharageable obligation in a Chapter 13 case.

### III. CONCLUSION

The court will enter a separate order pursuant to Fed. R. Bankr. P. 7058 that declares Ms. Davnant's award of $15,525 in attorney's fees, as set forth in the parties' April 10, 2009 divorce decree, excepted from any discharge that the Debtor might obtain in his Chapter 13 case pursuant to 11 U.S.C. § 523(a)(5).